## DELANO *vs.* THE AMERICAN INSURANCE COMPANY, in the City of Boston.

The defendants insured the plaintiff in the sum of $6000, on one-fifth of the freight of a ship, lost or not lost, for one year from September 10, 1859, the whole freight valued at $30,000, for a premium of seven and one half per cent. According to the last advices received by the plaintiff prior to the insurance, the ship was, on the 10th of September, 1859, at San Francisco, ready for sea, to sail that day, or the next morning for Hong Kong, and had then a small amount of freight and a considerable number of passengers. These facts were communicated to the insurers, previous to the insurance. The vessel sailed from San Francisco on the 10th of September, 1859, with freight only to the amount of $1876.75, and with passengers. When five days out, she was totally destroyed by fire. The premium usually charged, in 1859, on a single voyage, from San Francisco to Hong Kong, in a ship of a similar kind and size, was from one and a half to two per cent. *Held* that the defendants were concluded by the valuation stated in the policy, and that the plaintiff was entitled to recover one-fifth of that sum, viz. $6000.

*Held, also,* that the assured need not prove the value of the freight; the valuation being a mere substitute, as between the parties, for the computation of the value in an open policy; provided it was neither intended as a cover for a wager by both parties, nor fraudulently made by the insured.

That the case was the same as though the subject of insurance was actually proved to have been worth the sum at which it was valued.

*Held* further, that the defendants could not claim an allowance in the nature of salvage, for the pre-paid passage money.

THIS action was brought to recover the amount insured by the defendant upon the *freight* of the ship Mastiff, under a policy of insurance thereon, "lost or not lost," dated at Boston, the 26th October, 1859. The insurance was effected at Boston, on the day of the date of the policy, by the plaintiff and Mr. Balch, the president of the company. The vessel was already lost at the time of the insurance. But the plaintiff's last advices from the ship were up to the 10th September, 1859, to the effect that she was then at San Francisco, ready for sea, to sail that day or the next morning for Hong Kong, and "*that she had a small amount of freight and a consider-able number of passengers.*" These facts were communicated to Mr. Balch by the plaintiff before effecting the insurance. The insurance was "six thousand dollars on the *freight* of

Delano *v.* American Insurance Company.

the ship Mastiff, at and from San Francisco, for *one year* from September 10th, 1859," for a premium of seven and one half per cent, the freight valued at $30,000. No question was made as to the correctness of the statements made by the plaintiff. The vessel, in fact, sailed from San Francisco on the day named, (10th September,) having freight on board to the amount of $1876.75, and her between decks occupied by passengers. When five days out, she took fire, and was totally destroyed. No part of the cargo was saved, excepting the treasure, which was forwarded to Hong Kong in another vessel. The passage money, amounting to $3657, had been paid in advance, and a small portion of it had been refunded. There was a trifling salvage on the freight, which was conceded to the defendants in making up the amount of the plaintiff's claim.

At the close of the testimony, the counsel for the defendants asked the court to instruct the jury that the plaintiff was entitled to recover from the defendants only the proportion in the valuation in the policy, to wit, $6000, which that portion of the freighting capacity of the vessel actually devoted to the carriage of cargo bore to its full freighting capacity; but the court refused so to charge, and the defendants' counsel excepted. The defendants' counsel then asked the court to charge that the plaintiff was entitled to recover only the proportion of the valuation in the policy, to wit, $6000, which the portion of the freighting capacity of the vessel not occupied in the carriage of passengers bore to the whole freighting capacity of the vessel; but the court refused so to charge, and the counsel for the defendants excepted. The defendants' counsel then asked the court to charge that if the plaintiff was entitled to recover for a total loss of freight, under the circumstances of the actual employment of the vessel, the defendants were entitled to a reduction from the recovery, in the nature of salvage, of the amount of passage money received and retained by the plaintiff; but the court refused so to charge, and the counsel for the defendants ex-

cepted.   And thereupon the court charged and instructed the jury that the plaintiff was entitled to recover for a total loss, and that the sum which he was so entitled to recover was $6672.25.   To the whole of which charge and instruction the defendants' counsel excepted, and the jury, under the direction of the court, found a verdict for the plaintiff for the sum last named.   The defendants' counsel, at the same term and before the same justice, upon the judge's minutes, and upon their exceptions set forth, moved for a new trial; but the court denied the motion, and ordered judgment to be entered upon the verdict.

The defendants appealed from the judgment, and from the order denying a new trial.

*Joseph H. Choate,* for the appellants.   I. As to the application of the insurance to the successive voyages to be performed during the term of one year, mentioned in the policy, the true construction of the policy undoubtedly is that it was a distinct insurance upon each successive voyage the ship might undertake during the term, separately, to the same effect as if it had been by separate policies, insuring freight to the same amount on each successive voyage.   The amount of the premium charged, as compared with the ordinary premium on freight at the time, for the same voyage and vessel, makes this the only just construction of the policy in this case, as it is the only construction justified by the authorities.   (*Insurance Co. of Valley of Va.* v. *Mordecai,* 22 *How. U. S.* 111.   *Hugg* v. *The Augusta Ins. Co.,* 7 *id.* 595.   2 *Phillips' Ins.* § 1208, *and cases there cited. Thwing* v. *Washington Ins. Co.,* 10 *Gray,* 453.)

II.  A policy on "*freight*" cannot include or cover *passage money,* or any kind of compensation for the carriage of passengers.   Passage money must be insured by name, if at all, as "*freight*" applies only to the carriage of merchandise as cargo.   (*Wolcott* v. *Eagle Ins. Co.,* 4 *Pick.* 429.)

III.  Where, as in this case, "freight" is insured generally

in a valued policy, at a gross sum, on a general or seeking ship, this must be taken to mean *freight on a complete cargo;* that is to say, it is the estimate which the parties, by their contract, put upon the amount that might be earned by the use of the whole carrying capacity of the vessel, and if from some cause other than the perils insured against, the ship fails to employ her whole capacity to the earning of freight, and so the subject insured is not all at risk, the insured cannot recover the whole amount of the valuation, but must be limited to such proportion of the valuation as the part of the subject insured actually at risk bears to the whole of it, which was the thing valued in the contemplation and estimation of the parties to the contract, and intended to be covered. If the ship fails of a full freight, because there was no cargo to be had, the loss is not owing to the perils of the sea, and he cannot charge the underwriters with it. Since the decision in *Forbes* v. *Aspinwall,* (13 *East,* 323,) rendered by Lord Ellenborough in 1811, the rule seems never to have been disputed till now—1st, that in such a policy the valuation applies to the freight of a complete cargo ; and 2d, that if only a partial cargo is carried or secured, the insured can recover only that proportion of the valuation which the part carried or secured bears to a full cargo. In that case, the freight of a ship valued at £6500, was insured from any port or ports in Hayti to Liverpool, and the ship which had sailed with cargo from Liverpool to Hayti, on a voyage of barter, after exchanging a part of her outward cargo for 55 bales of cotton at one port in Hayti, proceeded with the same to another port for the purpose of making a similar barter of the rest of the outward cargo, but was lost by a peril of the sea before it was effected. The court held that the assured was entitled to recover only an apportionment of the valuation, according to the measure of actual loss, which was the proportion of it which the 55 bales actually at risk bore to the full cargo which the ship might have carried. It was contended there, as here, that because some freight was

at risk the whole amount of the valuation was necessarily recoverable. But Lord Ellenborough said: " The proposition is monstrous; instead of confining the policy as it ought to be confined to a contract as nearly as may be of indemnity against what may be lost in respect of freight, by the perils insured against, it converts it into a contract of indemnity against a different class of accidents which may operate to prevent the assured from being able to procure a full cargo upon freight, and may make it the interest of the insured, which it never ought to be, that a loss should happen," (*p.* 328.) A part only of the subject of the valuation of the thing intended to be insured was lost by the perils insured against; as to the 55 bales, the ship was prevented from earning freight by the perils of the sea, but as to the residue of her homeward cargo the cause which prevented her earning freight upon it was not any such perils, but the entire occupation of the rest of the ship at the time by outward cargo, the freight of which was not covered by the policy. The principle of this case has been uniformly recognized and affirmed both in England and here, in many cases, and by all approved writers. (*Devereaux* v. *Lanson,* 7 *Scott,* 507. *Philpot* v. *Swann,* 11 *C. B. N. S.* 270. *Hildyard Mar. Ins.* 7 *McK. & Les. Law Lib.* 168. *Arnold on Ins.* 311, 476, 484, 987, 1044, 1226. 2 *Phillips on Ins.* § 1204. 2 *Parsons' Marit. Law,* 69. *Dixon on Mar. Ins.* 42. 1 *Park on Mar. Ins.* 55–65.) Speaking on this subject, *Arnold* says, (*vol.* 2, *p.* 1226:) "Where '*freight*' is insured generally in a valued policy at a gross sum on a general or seeking ship, this must be taken to mean freight on a complete cargo." *Parsons* says, (*vol.* 2, *p.* 69,) "Where freight is valued, the valuation is presumed to apply to the freight of a full cargo, and if a part only be at risk, it applies only *pro rata.*" *Dixon* says (*p.* 42,) "If only the part of the freight of an entire cargo is at risk at the time of the loss, the valuation, under such a policy, is applied *pro rata* in adjusting the loss." The insurers in such case do not seek to " open the valu-

ation" in the technical sense of that term; or to set it aside, or to impair in any degree the effect which it must always have. They do not call upon the assured to prove the actual value of the subject insured. The valuation in the policy is conclusive, and is accepted by the underwriters as the standard and basis of their liability. But they say, "The whole of the subject insured which we valued was not at risk; a part only was at risk and lost by the perils of the sea—only one third of the freighting capacity of the vessel was used for earning freight. We are to pay, therefore, only one third of the valuation." (*See Lord Ellenborough's opinion in* 13 *East, ut supra.*) The mischievous tendency of the construction claimed by the plaintiffs is very apparent. The parties agree upon the insurance of the freight of a seeking ship, and they insert a valuation. They have no means of estimating her probable earnings, except by her tonnage; and the trade and region in which she is to be during the year being wholly uncertain and unknown, they estimate the value of the freight, considering only what amount she can probably earn by the use of her entire capacity for carrying cargo. By the lack of judgment of her owner, or the negligence of her master, or by any other cause not included among the perils insured against, she sails without cargo, or with a little in her lower hold—the great bulk of the vessel, the profit for the use of which was the subject insured, and the subject valued, is left idle, so that if she reached her port without encountering a peril, she would earn no freight, or only a small proportion of what was contemplated by the policy, and yet the entire valuation is claimed. The allowance of such a claim distorts the insurance of freight from a contract of indemnity to a mere wager, imposes upon the underwriters liability for perils not included in the policy, makes it for the immediate interest of the shipowner to have his ship lost, and opens wide the door to fraud. Hence our exception was well taken, viz: that the plaintiffs were not entitled to recover more than that proportion of the valuation which

the portion of the freighting capacity of the vessel actually devoted to the carriage of cargo bore to its full freighting capacity.

IV. But the distinctive feature of our case, which has not yet been mentioned, renders it impossible to allow the insured more, at any rate, than a proportionate part of the valuation in the policy, viz: the fact that one half of the ship—the whole between decks—was exclusively appropriated by the owners to the carriage of passengers—so much of the ship was actually and voluntarily diverted from the employment contemplated in the policy, the earning of freight by transportation of merchandise, and devoted to the purpose of earning passage money which was not covered by the policy. It was not, then, the peril of the sea, the burning of the ship, which prevented the plaintiffs from earning a full freight; but it was because they had their ship half full of passengers, a cause of loss of freight against which the defendants never undertook to insure them. As in the case of Forbes and Aspinall, the ship was prevented, at the time of the loss, from earning full freight on *homeward* cargo—the subject insured—by being filled with *outward* cargo, the freight of which was not insured; so here, this ship was prevented at the time of loss from earning full freight—the subject insured—by being filled with *passengers*, the carriage of which was not insured. In both cases, alike, only a part of the subject insured and valued was at risk, and for the part not at risk, and not at risk because of the occupation of the ship for other purposes foreign to the policy, the underwriters are not to pay. (*a*) The same rule of apportionment applies to every other species of contract. If the whole subject contemplated by the contract be not employed for the purposes of the contract, the party diverting a portion of it to other purposes, and getting himself the benefit of such diversion, cannot recover for the part not so diverted, the entire consideration agreed upon. (*b.*) Suppose this valuation, instead of being on the entire freight of one

ship, had been on two ships, upon the same terms, and the owners not getting freight for both, had carried the one full of passengers and a loss of that had occurred, could he have claimed one half the valuation? No one will pretend it. But the principle is the same, whether as in that case the whole of one half the subject insured, or as in this case, the half of the whole is diverted from the purposes of the policy. In both cases the insured elects as to one half the subject insured, not to put it at risk under the policy, but to make the best profit he can from it by other employment. He cannot, therefore, look to the underwriters, because he has rendered it impossible as to that half on that voyage, for the perils insured against to destroy or injure the subject insured. (c.) If the true construction of the policy is such, that failing to get a full cargo, the plaintiff might pursue his voyage with his ship empty, or nearly so, and yet in case of loss recover the whole valuation, still by electing to employ half of the ship for a purpose not contemplated by the policy, he has excepted the portion of the ship so used, and of the valuation, from the operation of the policy. (d.) If the plaintiff's construction of the policy holds good, then a ship owner having such an insurance may carry a few packages of cargo in the lower hold, and recover $30,000 for that, and insuring passage money by a separate policy for $30,000 more, devote the main part of the vessel to passengers, and in the event of loss recover for the use of the ship $60,000, or double the highest valuation of either party. (e.) In this view our exception is well taken, viz: that the plaintiffs are not entitled to recover more than that proportion of valuation which the portion of the freighting capacity of the vessel, not occupied in the carriage of passengers, bore to the whole freighting capacity of the vessel.

V. No aid to the plaintiff's construction of the policy can be drawn from the circumstance that at the time of the application for the policy, the situation of the ship as to cargo was disclosed to the underwriters. All that was so disclosed

was that "she was at San Francisco at the last advices; that she was about to sail for Hong Kong, with a small amount of freight and some passengers," but how much freight or how many passengers was not disclosed, because it was not known to the applicant. If these facts so far as known had not been disclosed, the applicants would have been guilty of a fraudulent concealment which would have avoided the policy—and that was the object of making them—but they were not intended and could not operate to change the subject matter insured and valued, which is stated in the policy to be "*the freight of the ship Mastiff, for one year,*" not the freight of a part of the ship, nor the freight of any particular goods laden on the ship, the phrase selected when the object is to insure and value only a partial freight, but the freight of the whole ship for the whole year. (*a.*) Policies of insurance form no exception to the rule applicable to all written contracts, that where the terms of the contract are explicit and explain themselves, parol evidence cannot be received to change or affect their obvious meaning. And it has repeatedly been expressly decided that things said or written by either party, or by both, while arranging for the policy, form no part of it, unless specially referred to in it. In the language of Parker, C. J., "The policy itself is considered to be the contract between the parties; and whatever proposals are made, or conversations had between the parties, prior to the subscription, they are to be considered as waived if not inserted in the policy." The words, "the freight of the ship Mastiff for one year," are not in any view ambiguous. (*Higginson* v. *Dall*, 13 *Mass.* 96. 2 *Parsons' Marit. Law, p.* 50, *and cases cited.* *N. Y. Ins. Co.* v. *Thomas*, 3 *Johns. Cas.* 1. 1 *Arnold*, § 462.) (*b.*) The context of the policy forbids us to doubt that the valuation was understood by the parties to apply to *the freight of a full cargo*, and that the liability of the defendants was to extend only so far as the entire freight that the ship could earn, was put at risk. For in the subsequent

clause, relating to prior insurance it is expressly provided that in case of prior insurances, "then the said insurance company shall be answerable only for so much as the amount of such prior insurance may be deficient towards fully covering *the property at risk.*" Both parties to the contract are shown to have understood that the whole freight was insured by this and other policies, to the extent of $30,000, at which it was valued. If then they are held to have intended the valuation as the value of the freight of any partial cargo shipped, however small, then this clause as to prior insurances fails of effect; for in any event in which the policy might attach at all, the defendants would be liable to the whole amount, which is contrary to the obvious meaning of the parties. (c.) But if the parol evidence is sought to be applied, it forms no basis for the plaintiff's construction of the policy. He claims that the parties must be intended to have agreed that $30,000 was the value of the freight of the small amount of cargo which was stated to be shipped. But the amount of cargo shipped was utterly unknown to the underwriters; they had no possible basis for applying any valuation to it. Or if the amount actually shipped was known, they cannot have estimated so paltry a sum at $30,000, which was nearly twenty times its true amount, which if done, would be a mere cover for a wager, and as such void. (2 *Parsons' Marit. Law*, 63, *and cases cited.*) Such wager policies are held void in Massachusetts, where this contract was made. (2 *Parsons' Marit. Law*, 89, *and cases cited.*) (d.) But there is another reason apparent upon the face of the policy itself, why the parol evidence offered as to the particular circumstances of the first voyage should not be used to distort the words "on the freight of the ship Mastiff for one year," from their obvious and established meaning of the entire freight of a full cargo from time to time. It has been seen from the authorities cited, that the entire valuation applies to the freight that may be earned on each successive voyage that the ship may make during the

year. If this is so, it must apply in equal measure and to the same effect to each successive voyage. The $30,000 means either the freight of a full cargo, on each voyage, or else the freight of whatever the ship might get on each voyage. The latter will not be claimed, in view of the authorities, in the absence of any information or knowledge as to the voyages intended after the first. It must then have been the *whole freight* of a full cargo that the parties undertook to value for each voyage, the first included; and the terms which the parties have selected to govern the insurance for a large number of successive voyages, to be prosecuted during a whole year, will not be turned from its meaning and purpose to suit the accidental circumstances of the first voyage of fifty days, and to give the insured additional privileges on that, which it will be admitted he could not have claimed on the subsequent voyages.

VI. If the views presented in the previous points are correct, then the defendants' motion for a nonsuit should have been granted, and our exception to the refusal was well taken. The evidence is that not more than one third of the subject insured, the freight of an entire cargo was at risk at the time of the loss, and that there were other insurances upon the same freight, prior in date to this policy, to the amount of $24,000, or four fifths of the whole valuation, and by the terms of the contract in such case, the defendants are to be answerable only for so much as the amount of such prior insurance may be deficient towards fully covering the property at risk. There is no such deficiency; the prior insurances more than covered the portion of the subject insured which was at risk, and the plaintiffs have no remaining claim.

VII. Finally, if the defendants are in this case to be held liable for the full amount of the valuation, as if the whole subject insured was at risk, and although the owner diverted one half of the ship from the purposes contemplated by the

policy to the earning of passage money, which was foreign to it, then, at any rate, the defendants are entitled to be credited as salvage, with their proportion of the moneys actually received by the plaintiffs for the use of the ship during the term covered by the policy, viz: their one fifth of the passage money prepaid and not refunded, which will amount to $621.40. This was denied by the court below solely upon the ground of the supposed liability of the plaintiffs themselves to pay it back to the passengers. But upon the facts appearing in this case there is no such liability. There is here no evidence of the terms of the contracts between the passengers and the ship as to the refunding of the prepaid passage money in the event of the loss of the ship. And it is well settled that there is no such thing as an absolute liability, as matter of law, to refund in such case, but that the question depends upon the particular terms of the contract with each passenger, and also that when indemnity is sought under a policy for a loss contingent upon a liability, which will give it practical effect, that liability must be shown to be inevitable, as the necessary result of the law upon the agreement of the parties and the facts of the case. Therefore, in a late case, on all fours with this, as to this point, where the whole passage money was prepaid and the ship lost on the voyage, the superior court held that the insured could not recover without proof that by the contracts with the passengers the passage money was to be refunded, wholly or in part, in case of a failure to deliver them at the port of destination; or unless it appears that on the facts shown to exist the insured is liable to refund. (*Ogden* v. *The N. Y. Mut. Ins. Co.*, 4 *Bosw.* 447.) If the plaintiffs are allowed to retain this salvage without crediting it to the company, the result will be that in addition to the $30,000, his complete indemnity for the loss of the use of his ship, they get all the passage money besides, and to that extent obtain from the underwriters compensation for a loss not sustained.

*H. G. De Forest,* for the respondent.   I.  The defendant offered no evidence tending to show any agreement applying the valuation "to a full cargo and to the whole carrying capacity of the vessel ;" and unless the policy itself contains such an agreement, the valuation cannot be opened.

II. In examining the policy itself, in order to ascertain whether the defendant is entitled to an apportionment of the amount insured, the following considerations are important : (1.) The subject of insurance is *freight.*   (2.) The policy is a *"time policy."*   (3.) The subject insured is *valued* at $30,000.   (4.) The amount insured is $6,000—*i. e. one fifth* of the subject insured.

III. As to the subject matter of insurance.   1st.  Freight, as a subject of insurance, is "the benefit to be derived by the shipowner from the employment of his ship." (*Per Lord Tenterden, in Flint* v. *Flemyng,* 1 *B. & Ad.* 48.  5 *Bing. N. C.* 519.   *De Vaugh* v. *J'Anson,* 1 *Metcalf,* 146.   *Robinson* v. *Mans. Ins. Co.,* 1 *Arnould on Ins. p.* 203, 204, *ch.* 9, § 1.)   (*a.*) This benefit may be in the compensation to be paid for the use of the ship, under an express contract for the whole ship, or a part of it.   (*b.*) It may consist of such compensation to be paid without regard to an express contract.   (*c.*) Or of the advantage which the shipowner expects to receive from the carriage of his own goods.   (*Authorities above cited.   1 Arnould Ins. p.* 227, *marg.* 221.)   (*d.*) The insured upon *"freight"* can recover, if he loses the use of his ship by the perils insured against.   (*e.*) "Passage money" is not insurable under the description of *"freight."*   (*Lewis* v. *Marshall,* 7 *Man. & Granger,* 741.)   2d.  The underwriter on "freight" is liable in all cases where the insured *has been deprived of the benefit of the use of the ship by the perils insured against.*   Under the above rules the insured can recover in either of the following cases, even where there is no cargo on board : 1. Where there is a charter party, and the vessel has broken ground.   2. Where there is a contract under which the shipowner is entitled to cargo.   3. Where the

shipowner has procured or contracted for his own goods with the intention to ship them. (*Gordon* v. *Amer. Ins. Co.*, 4 *Denio*, 360.) 4. Where the owner has funds on board, or reliable credit wherewith to procure a cargo, and a cargo is procurable. (1 *Phill. Ins. p.* 193.) 5. Where the policy, by itself, or the circumstances proved, show an intention to cover *dead* freight. (*Delonguemere* v. *Phœnix Ins. Co.*, 10 *John.* 127.)

IV. The insurance considered with reference to its qualities as a "*time policy.*" 1. Even in a *voyage* policy, where the freight of an entire voyage outward and homeward is valued in gross, and the loss occurs on the homeward voyage, the valuation is held to apply to the homeward freight, though the outward freight has been earned and paid. (1 *Arnould Ins.* 319, 320. 2 *Phill. Ins. p.* 27, § 1208. *Davy* v. *Hallett*, 3 *Caines' R.* 16.) Freight valued at $2,000, at and from Philadelphia to Omoa and Golfo Dulce, and at and from thence to Philadelphia, and loss on homeward voyage ; the recovery was for the valuation. 2. The same principle is applicable to successive voyages, under a time policy, where the freight is valued. The valuation is applicable as a valuation of each separate voyage, without apportionment. (*Wolcott* v. *Eagle Ins. Co.*, 4 *Pick.* 429. *Patapsco Ins. Co.* v. *Biscoe*, 7 *Gill & John.* 293.) 3. It follows from this principle, that in case of total loss of the ship, under the policy in question, the recovery would be for the entire amount of the valuation, whether the voyage were a short one, *e. g.*, from New York to Philadelphia, or whether it was a long one, *e. g.*, from New York to Hong Kong. Yet it is evident that the amount of the actual freight earned on the long voyage would be greatly in excess of that earned on the shorter one. 4. No return of premium could be recovered under a policy like this, notwithstanding the loss occurred within a week after the insurance took effect. (*Loraine* v. *Thomlinson*, 2 *Dougl.* 585. 2 *Arnould Ins.* 1216.)

V. The policy considered as a *valued* policy. 1. It is not

pretended that this was a wager policy, and no such sugges-tion was made on the trial.   2. The policy is not only *on time*, but the freight is expressly valued at $30,000, and the insu-rance is for $6,000, or one fifth of the amount.   3. There are no words in the policy which show an intent to apply the valuation to the freight of a *full cargo*.  The subject insured is "the freight of the ship *Mastiff*."   4. Though some loose dicta of an elementary writer may be produced, to the effect that a valuation of freight is *presumptively* that of a full cargo, it will be found that they are not sustained by any authority cited.   And no such dictum even can be produced, which claims anything more than a *presumption* in favor of such construction.   5. The general rule as to the effect of the valuation in a valued policy is well stated in 1 *Arnould Ins.* (*p*. 314,) as follows : "The rule, therefore, is, that under a valued policy, the assured must prove that he had in fact *some* insurable interest in the subject insured, but he need never prove the value of such interest, unless the circum-stances are such as to raise a suspicion of fraud."   And the same writer had previously stated, on page 309, "that the valuation in the policy is conclusive, and the case is the same as though the subject of insurance was actually proved to have been worth the sum at which it is valued."   6. It is enough, therefore, that the plaintiff had some freight on board to which the valuation could attach.   The subject insured, *i. e.* "the freight of the ship," then existed as an entity, to which the valuation attached, and having thus attached it cannot be opened.   In support of this proposi-tion we attach a submission of the identical question here discussed, arising upon a policy precisely similar, on the same ship, and the opinion of two eminent referees of the Boston bar thereon.(*a*)   (*As to the authority of such decis-*

(*a*) Submission referred to.
"Insurance was effected on the ship *Mastiff* and *freight*, from one year from September 10, 1859, as per policies herewith enclosed.   The ship sailed from San Francisco for Hong Kong, on the 11th day of September, 1859,

Delano *v.* American Insurance Company.

*ions, see* 1 *Phil. Ins.* 190. 3 *Taunt.* 505. *Coolidge* v. *Gloucester Ins. Co.,* 15 *Mass. R.* 341.)

VI. But, independently of the views already submitted, as to the construction of the policy *per se,* the facts proved on the trial show clearly that the parties *intended* that the valuation should apply to the freight actually on board. 1. The defendant was informed at the time of effecting the insurance, that the ship had completed her loading, and that she had but a partial cargo on board, and this was the fact. Under these circumstances, the defendant issued the policy, and charged the premium on the entire valuation, and described the subject in general terms, as " the freight of ship *Mastiff."* 2. It cannot be pretended, therefore, that it was intended by the insured to carry a full cargo on the voyage covered by

and was totally destroyed by fire at sea, five or six days afterwards. At the time of the loss a small portion of the lower hold was appropriated to cargo, paying freight, and there were one hundred and eighty passengers on board. The entire freight and passage money pending was between $4000 and $5000, of which the sum of $3715.68 (including $3658 passage money,) was prepaid. A portion of the passage money has been retained. The assured claim for a total loss of *freight,* according to the valuation.

An opinion as to the liability of the underwriters is requested.

(Signed)　　J. M. FORBES & Co.,　　　　R. S. S. ANDROS,
　　　　　　　　　　　　　　　　　　　　　　　*Prest. Alliance Ins. Co.*
　　　　　　　F. W. BALCH,　　　　　　　P. W. FREEMAN,
　　　*Prest. Boylston L. and M. In. Co.*　　*Prest. Boston Ins. Co.*
To the Hon. B. R. Curtis and F. C. Loring, Esq."

### Opinion of Referees.

"We have spent much time in investigating this case, and the various questions growing out of it, separately, and without consultation, and having arrived at the same conclusion, will state that, without going into a detail of the various reasons which led to that result:

The policy is on time—having reference to no particular voyage or means of earning freight—it was not impossible or improbable that during the time the vessel might earn freight to the amount of the valuation—there is no pretense that the parties contemplated a wager policy—of fraud or mistake—and there was freight pending to which the policy could attach.

On this state of facts, we are of opinion that the valuation cannot be opened, and that the owners are entitled to recover the whole amount insured on freight.　　　　　　(Signed)　　B. R. CURTIS,　F. C. LORING."

the insurance, or that it was expected by the defendant that a full cargo should be carried. 3. The defendant's counsel was asked by the justice presiding at the trial, if he claimed there was any disputed fact to be passed upon, and replied in the negative; and even though the evidence had been conflicting, as to what the "freight" intended to be valued was, (and it was not,) the question of fact cannot now be started. (*Wilklow* v. *Lane,* 37 *Barb.* 250. *Dows* v. *Rush,* 28 *id.* 157.) 4. Had the insurance been only for the voyage between San Francisco and Hong Kong, the usual premium would have been but one and a half to two per cent, instead of seven and a half, the amount charged. 5. Both parties knew that the actual freight on this particular voyage was small, but they also knew that on the next voyage it might be very large. It was for the very purpose of fixing the amount of loss by stipulation that the valuation was made. 6. The decided cases sustain these views. (*Montgomery* v. *Eggington,* 3 *T. R.* 361.) Action on a freight policy, valued at $1500; the vessel was lost while receiving freight, she having at the time but $500 of freight on board. Lord Kenyon held, that if this was not a gaming policy, the insured must recover for the whole valuation. (*Forbes* v. *Aspinwall,* 13 *East,* 327.) Insurance on freight valued, and the vessel was taking on board her *intended cargo* when she was totally lost, having only a part of her *intended* cargo on board. *Held* that the valuation was applicable to the freight of the goods she was intended to carry, and that the valuation was to be apportioned. By the court: " The valuation in the case of goods, looks to all the goods intended to be loaded, and in case of *freight,* it looks to the freight upon all the goods the ship is *intended* to carry on the voyage insured. "N. B. It appeared as a matter of fact in this case, that both insured and insurers had intended to apply the valuation to an entire cargo; and this fact was established, not by the terms of the policy, but by the circumstances attending the loading of the vessel. (*Coolidge* v. *Gloucester Ins. Co.,* 15 *Mass. Rep.* 341.) Insurance on

ship and freight, each subject separately valued. There was but a partial cargo on board, and the defendants claimed to have this valuation opened; the recovery was for the valuation. The court say: "The defendants were willing to take the premium upon that amount, and we do not feel at liberty to disregard the agreement which was made by the parties to prevent litigation, and upon good consideration. *It is not found that the ship did not take all the cargo which could have been procured at Amsterdam. In this it differs from Forbes* v. *Aspinwall.*" * * * * In the case at bar, the whole subject matter to which the valuation applied has been lost. (*Wolcott* v. *Eagle Ins. Co.,* 4 *Pick.* 429.) Insurance on "*cargo or freight*" valued jointly. The vessel at the time of loss, had on board a number of mules and ten doubloons. *Held,* that mules are not insurable as cargo; and that the only cargo on board was the ten doubloons; that the plaintiffs did not intend to apply the valuation to the ten doubloons, but to the doubloons and mules, and that as the doubloons only were covered, the valuation was to be opened. (*Page* 437.) The court cites *Coolidge* v. *Gloucester Ins. Co.* with approbation, saying of that case (*page* 436,) "If they had obtained *no* freight, there would have been nothing at risk, and the policy would not have attached. They did, in fact, think it worth their while to proceed with what they procured, and *it did not appear that the valuation was founded upon a full loading of the ship.* * * * *The whole subject matter of the valuation was at risk, and it was lost.*"

VII. As to the defendant's right to claim an allowance "in the nature of salvage" for the prepaid passage money. 1. The "salvage" to which the underwriter is entitled on payment for a total loss, is only the property transferred by an abandonment. It follows that it can be claimed only out of the savings of the subject insured. 2. The "passage money" was a distinct subject of insurance, and could have been insured and valued separately. 3. The prepaid passage money was recoverable from the owners, the voyage not having been per-

formed.  *Bonsteel* v. *Vanderbilt*, 21 *Barb*. 27.  *Briggs* v. *Vanderbilt*, 19 *id*. 223.  *Howard* v. *Astor Mut. Ins. Co.*, 5 *Bosw*. 38.)

VIII. The plaintiffs are entitled to recover for the full amount of the valuation as adjusted on the trial, and the judgment should be affirmed.

*By the Court*, CLERKE, J.   The defendants insured to the plaintiff $6000 on one fifth of the freight of the ship Mastiff, lost or not lost, for one year, from September 10, 1859, at noon, the whole freight valued at $30,000.  According to the policy, if the insured should have made any other insurance upon the freight prior in date, the company should be answerable only for so much as the amount of such prior insurance may be deficient towards fully covering the property at risk, whether for the whole voyage, or from one port of lading or discharge to another.  No question, however, arises under this provision.  The freight was valued, as we have said, by the parties at $30,000, and the defendants insured one fifth of this valuation at $7\frac{1}{2}$ per cent.  According to the advices which had been last received by the owner, previous to the insurance, the ship was on the 10th September, 1859, at San Francisco ready for sea, to sail that day or the next morning for Hong Kong, and had then a small amount of freight and a considerable number of passengers.  These facts had been communicated to the company before the insurance was effected.

The vessel sailed from San Francisco on the 10th of September, 1859, with freight only to the amount of $1876.75, and with passengers who occupied the whole between decks. When five days out, she took fire, and was totally destroyed.

We have seen that the premium charged was $7\frac{1}{2}$ per cent on the valuation ; and it was admitted, at the trial, that the premium usually charged in 1859 on a single voyage from San Francisco to Hong Kong, in a ship of the size and kind of the Mastiff, was from one and a half to two per cent.

Delano *v*. American Insurance Company.

The policy, then, was on time, and had no reference, it seems, to any particular voyage or means of earning freight. Under these circumstances, are the defendants concluded by the valuation stated by the policy, or can the plaintiff recover only the proportion of the valuation in the policy, to wit, $6000, which that proportion of the freighting capacity of the vessel actually devoted to the carriage of cargo, or not occupied in the carriage of passengers, bore to its full freighting capacity?

The counsel for the defendants has referred with considerable confidence to *Forbes* v. *Aspinwall*, (13 *East*, 323,) to show that they are not concluded by the valuation stated in the policy. But in that case there was nothing to show that the underwriters intended to insure any thing but the freight on the cargo actually received. The language of Lord Ellenborough is, " In this case, therefore, as there was no contract, under which the shipowner could claim freight, but for goods actually shipped on the homeward voyage, the assured could have made no claim, had this been an open policy, but to the extent of the actual freight on the 55 bales of cotton which were shipped," &c. And he asks whether it makes any essential difference that the case before him was a case of a valued policy. He, undoubtedly, considered whether, in the case of an open or a valued policy, the insured was entitled only to claim for freight on goods actually shipped; but his opinion contains nothing in contravention of the idea that, if the underwriters intended, in a case like the present, not to apply the valuation to the full cargo and the whole carrying capacity of the vessel, the shipowner could recover the whole amount of the valuation. The rule in such cases is now well established that the valuation in the policy is conclusive.

The assured need not prove the value; the valuation is a mere substitute, as between the parties, for the computation of the value in an open policy, provided it is neither intended as a cover for a wager by both parties, nor fraudulently made by the assured.

The case, then, is the same as though the subject of insurance was actually proved to have been worth the sum at which it was valued. Not only does the nature of the policy itself, in this case, but the rate of premium and the facts communicated to the underwriters, indicate this intent; and, in the absence of fraud or mistake, the valuation cannot be opened. The evidence of the communication of those facts was not objected to at the trial; and if it was, the objection that the evidence tended to vary a written instrument could not be sustained.

The defendants cannot claim an allowance in the nature of salvage for the prepaid passage money. It is recoverable by the passengers from the owners in cases where the voyage has not been performed. (*Bonsteel* v. *Vanderbilt*, 21 *Barb.* 27.)

The judgment should be affirmed, with costs.

[NEW YORK GENERAL TERM, May 2, 1864. *Leonard, Clerke* and *George G. Barnard*, Justices.]